[Civ. No. 11707. Second Appellate District, Division One.—March 3, 1939.]

FLORENCE KADOW et al., v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Ray L. Chesebro, City Attorney, Frederick Von Schrader, Assistant City Attorney, Albert E. Wheatcroft and Louis A. Babior, Deputies City Attorney, for Appellants.

Joseph L. Fainer for Respondents.

DORAN, J.—This is an appeal by defendants City of Los Angeles and Roy E. Smith from a judgment in favor of plaintiffs, for damages for personal injuries sustained in an automobile accident.

Defendant Smith, a police officer of the City of Los Angeles, during the period in which the accident occurred was assigned to the vice squad on the so-called "Valley Division"

at Van Nuys, working out of Captain Thornberg's office at the Central Station in Los Angeles. For use in connection with Smith's duties a Ford automobile, owned by the City of Los Angeles, was permanently assigned to him; the car was kept at his home in North Hollywood when not in use. Smith's duties, for the most part, consisted of "touring" in the Valley Division from Mulholland Drive to Sunland, Tujunga and Chatsworth. Approximately five per cent of his investigating work arose from reports or specific complaints; the balance of his work consisted in going from location to location, making investigations in various neighborhoods to determine the character of new residents, visiting schools and clubs, and making the acquaintance of those people who might give information as to undesirable conditions. The tours usually lasted from the time Smith checked in at the Central Station, by telephone, in the morning, until he checked out, also by telephone, at night. In answer to the question: "What are your hours on duty?" Smith replied, "We make our own hours. . . . We work whatever hours that we can to accomplish the duties we have."

The collision involved herein occurred in Los Angeles on Sunday, August 9, 1936, at about 6:15 o'clock P. M., in the vicinity of Sunset and Griffith Park Boulevards, between the city-owned automobile driven by defendant Smith and an automobile owned and driven by plaintiff Clarence Kadow, in which his wife, Florence Kadow, was riding.

The evidence reveals that on the day of the accident Smith reported in to the Central Station at 9 o'clock in the morning; that, accompanied by one Sergeant McMullen of his detail, he performed the required duties in the valley until 2:45 o'clock in the afternoon; that Smith then drove McMullen to his home in Los Angeles; and that he thereafter visited the pistol range at Elysian Park in Los Angeles, where a barbecue was being given by the Police Post of the American Legion for visiting Legionnaires of the police department and police officers from outside towns in California. Earlier in the day one James E. Clementine, a lieutenant of the Los Angeles Police Department, who was second in command at the Van Nuys Station but not directly connected with the vice squad, visited Smith at the latter's home. During the course of their conversation defendant Smith informed Clementine that he expected to take McMullen home at 3 o'clock

in the afternoon, whereupon Clementine asked Smith if the latter would pick him up at Elysian Park at around 4 o'clock on his way back to the valley, as he (Clementine) was to report for duty at the Van Nuys Station at that time. At the designated hour Smith arrived at Elysian Park and met Clementine, but he did not leave immediately as Clementine, expecting to be late, had telephoned to a Sergeant Dowling and had asked him to remain at the station until Clementine's arrival. At around 6 o'clock that evening Smith, accompanied by Clementine and a Mr. Elwyn D. Wulsten, who lived in North Hollywood and who was a friend of Clementine's, and two other gentlemen whom they picked up at Echo Park Avenue, proceeded to the Van Nuys Station by way of North Hollywood. While en route, the accident involved herein occurred.

Defendant Smith testified, in effect, that Lieutenant Clementine was a superior officer although not assigned to Smith's division; that his act in taking the lieutenant back to Van Nuys was not one of his prescribed duties but was "more or less a return of courtesies"; that, with the exception of Sergeant McMullen, no one at the Central Station knew where he was going that afternoon; and that he did not "sign" off duty on this particular night because, at the time he called the Central Station, which was at about 7 o'clock in the evening, his office was closed.

The trial court found, in part, as follows: " . . . that at all times herein mentioned the defendant Roy E. Smith was employed and hired by the defendant City of Los Angeles, a Municipal Corporation, and was acting within the course and scope of his employment as an agent, servant and employee of the defendant City of Los Angeles, a Municipal Corporation. . . . That . . . on or about August 9, 1936, while the defendant Roy E. Smith was acting within the course and scope of his employment for the defendant City of Los Angeles, a Municipal Corporation, he was in possession and control of a certain automobile owned by the defendant City of Los Angeles, which automobile Roy E. Smith was then and there driving and operating with the knowledge and consent of the owners, going in a general westerly direction on Sunset Boulevard . . . "

The sole point raised on appeal by the city is "whether, at the time of the accident, Smith, when transporting his

friends to their destinations, was acting within the course and scope of his employment, and whether the city automobile at that time, was then being used for a municipal purpose''.

The only point raised on appeal by defendant Smith is ''whether the respondents waived their right to recover against him by failing to present to and file with him a written and verified claim, pursuant to Statutes of 1931, page 2476, as amended by Statutes of 1933, page 2148'', which statute reads, in part, as follows: ''1. *Claims based on negligence of public officer.* Whenever it is claimed that any person has been injured or any property damaged as a result of the dangerous or defective condition of any public street, highway, building, park, grounds, works or property, and/or *the negligence or carelessness of any public officer,* a verified claim for damages shall be presented in writing and filed with such officer and the clerk or secretary of the legislative body of the municipality, county, city and county, or school district, as the case may be, within ninety days after such accident has occurred. Such claim shall specify the name and address of the claimant, the date and place of the accident and the extent of the injuries or damages received.'' (Act 5150, Deering's Gen. Laws, 1931.) (Italics added.)

It is evident from the foregoing somewhat detailed *résumé* of the facts that defendant Smith was not engaged in the performance of an official act when the accident occurred. The performance by a subordinate at the request of a superior officer, of an unofficial act, does not necessarily give to such act official character or even official color. There is no evidence in the record to support the finding that defendant Smith was, at the time of the accident, acting within the course and scope of his employment, as agent, servant and employee of the City of Los Angeles. (See *Brindamour* v. *Murray,* 7 Cal. (2d) 73 [59 Pac. (2d) 1009].)

 With regard to appellant Smith's contention that the failure of plaintiffs to file with him a written and verified claim pursuant to Act 5150, above referred to, foreclosed plaintiffs' right to recover, it should be noted that the requirement pertains to the ''negligence or carelessness of any public officer''. Assuming, but only for the sake of argument, that the above act is applicable, manifestly the provisions are not intended to extend to, and to include, civilians. A peace of-

ficer, so far as the legal effect of the above provisions is concerned, unless on official duty or engaged in some official act within the course and scope of his employment, is a civilian within the meaning of the act. The foregoing disposition of appellant Smith's contention is not to be understood as deciding that the point is well taken or that the act relied upon is applicable.

█ Appellant Smith's contention, which appears for the first time on appeal, in substance to the effect that the failure to file a written claim with him, the officer, within ninety days after the accident constituted a waiver, is without merit. It is the general rule that a party to an action who relies upon a waiver must specially plead such waiver. (25 Cal. Jur., p. 931.) Moreover, "In no case will a waiver be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to;" also, "A waiver is the intentional relinquishment of a known right with knowledge of the facts." (Cal. Jur., *supra*, pp. 926, 928.) There is no justification for the application of the doctrine in the case at bar.

For the foregoing reasons the judgment is reversed as to defendant City of Los Angeles, and is affirmed as to defendant Smith.

York, P. J., and White, J., concurred.